FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

2010 JAN 28  P 12: 07

CLERK US DISTRICT COURT
RICHMOND, VIRGINIA

TERRI L. NELSON )
)
Plaintiff, )
)
v. ) Civil Action No.: 3:10c V 052 (REP)
)
THE PRUDENTIAL INSURANCE COMPANY )
OF AMERICA )
Serve:  CT Corporation System )
        Registered Agent )
        4701 Cox Road, Suite 301 )
        Glen Allen, VA 23060 )
)
and )
)
LONG TERM DISABILITY COVERAGE FOR )
ALL EMPLOYEES OF THE ASSOCIATES PRESS )
WHO ARE COVERED BY A COLLECTIVE )
BARGAINING AGREEMENT BETWEEN THE )
EMPLOYER AND THE NEWS MEDIA GUILD )
Serve:  c/o Registered Agent for )
        The Associated Press )
        James R. Williams )
        600 E. Main Street, Suite 1250 )
        Richmond, VA 23219 )
)
        Defendants. )

## COMPLAINT

Plaintiff Terri L. Nelson ("Nelson"), by counsel, states as follows as her Complaint

against defendants The Prudential Insurance Company of America ("Prudential") and the "Long

Term Disability Coverage For All Employees Of The Associated Press Who Are Covered By A

Collective Bargaining Agreement Between The Employer And The News Media Guild" (the

"Plan") (collectively "Defendants").

## NATURE OF ACTION

1.     This is an ERISA[1] denial-of-benefits case.  Nelson, who suffers from post-concussion syndrome as the result of a T-bone motor vehicle accident in 2004, submitted a claim for long-term disability ("LTD") benefits to Prudential due to disabling cognitive difficulties arising therefrom.  In support, she provided (i) medical opinions from several treating physicians stating that she was incapable of performing the duties of her regular occupation because of her post-concussion syndrome and (ii) numerous contemporaneous medical records supportive of her claim.  Prudential, however, denied the claim.  It said that Nelson was *not* disabled, yet it did so by: (i) arbitrarily discounting the credible and reliable medical opinions of Nelson's treating physicians; (ii) failing to have a qualified medical expert conduct a person-to-person examination – which is particularly important when assessing one's cognitive, psychological, or neurological problems – of Nelson at any time during the review process; and (iii) basing its denial decisions almost exclusively on the medical opinions from non-examining, non-treating physicians who were retained by two third-party companies which (i) regularly do business with insurance companies (including Prudential, Hartford, and others), (ii) have a financial incentive to provide opinions favoring denial, and, indeed, (iii) even advertise insurance-friendly slogans on their websites, such as "objectivity helps ensure *defensibility*."

2.     Prudential's denial decision on these facts is wrong, an abuse of discretion, and a failure to provide a full and fair review.  Nelson, therefore, brings this action: (i) to enforce her rights, pursuant to § 1132(a)(1)(B) of ERISA, to receive LTD benefits under the Plan; and (ii) to declare that Prudential failed to provide Nelson with a "full and fair review," as required under ERISA, with respect to her claim for LTD benefits.

---

[1] "ERISA" refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.*

## PARTIES

3.      Nelson is a resident of Richmond, Virginia, and at all relevant times, is, was, and has been, a participant, as defined under § 1002(7) of ERISA, in the Plan.

4.      The Plan is an employee benefit plan, as defined under § 1002(3) of ERISA, and, as such, is governed by ERISA. The Plan's Group Policy Number is 41539.

5.      Prudential is a New Jersey corporation with its principal place of business in Newark, New Jersey. At all relevant times herein, Prudential is, and has been, the claims administrator and claims fiduciary, as those terms are defined under §§ 1002(16) and (21) of ERISA respectively, for the Plan. In its capacity as the administrator and claims fiduciary for the Plan, Prudential made the denial decisions at issue in this suit.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

7.      Venue is proper in this district and division pursuant to 29 U.S.C. § 1132(e)(2), 28 U.S.C. § 1391, and Local Rules 3(B)(4) and 3(C), as this is the district and division where a substantial part of the events or omissions giving rise to the claims herein occurred.

## FACTS

8.      For eight years, Nelson worked as a Broadcast Editor and General Assignment Reporter for The Associated Press ("AP"). Her last day of full-time active work prior to seeking LTD benefits was April 24, 2008.

9.      Effective April 28, 2008, Nelson applied for LTD benefits with Prudential under the terms of the Plan. According to these Plan provisions, a Plan participant, such as Nelson, can receive up to twenty-four (24) months of LTD benefits if she is unable to perform the "material and substantial duties" of her "regular occupation."

3

10.     Here, Nelson is entitled to such benefits because she is unable to perform the material duties of her position with the AP due to cognitive problems, including, but not limited to, memory and concentration problems, confusion, mental fatigue, and headaches, that resulted after she was involved in an automobile accident in November 2004.   Nelson, who was seat-belted while driving her car through an intersection in Henrico County, Virginia, was T-boned by a driver who negligently ran the red light at the intersection.   The car struck Nelson's car on the driver's side, where she was located, and she was immediately taken to the hospital with amnesia as to the accident itself.   Nelson suffered a concussion from the collision.

11.     Ultimately, Nelson was diagnosed with post-concussion syndrome.   After that and over the next several years, she experienced sustained and continuous cognitive difficulties arising from her brain injury.   Nelson's difficulties became so pronounced that as of 2005, she required at least one day a week off (usually Wednesdays) to assist her in trying to "recharge" her brain and ease her brain fatigue in between periods of work.

12.     Nelson's cognitive difficulties were well-documented in her medical records. Accordingly, in support of her claim for benefits, Nelson submitted numerous such records, including ones from her family practitioner (who treated her continuously from the time of the accident through the time of her claim and who has intimate familiarity with her cognitive difficulties), two neurologists, a licensed clinical social worker, and a physical medicine physician. These records, all of which were prepared by health care providers who personally examined Nelson, showed the sustained nature of Nelson's cognitive problems and uniformly demonstrated that Nelson was incapable of performing the material duties of her regular occupation as of April 28, 2008.

4

13.    Despite Nelson's supporting evidence, Prudential denied Nelson's LTD claim by letter dated August 1, 2008.  The letter contained no meaningful discussion of the merits of Nelson's claim and no substantive analysis of Nelson's *supporting* evidence.  Instead, the letter rejected Nelson's claim by essentially saying that since she had worked in some form or fashion from the time of the accident up through the date of her claim, she could not really be disabled.  In relevant part, Prudential's letter stated:

> Based on the medical information on file, you [sic] condition at the time you went out of work does not appear to be substantially different from your condition during the time you were working.  Available evidence demonstrates that you worked with your medical condition for some time prior to going out on work.

A true and accurate copy of this letter is attached hereto as **Exhibit A**.

14.    Nowhere in Prudential's letter, however, did the Company acknowledge that the *only way* Nelson had been able to work during this time period (i.e., the time prior to making her claim for benefits) was through the use of substantial accommodations from the AP, which had finally become unworkable and ineffective.

15.    Nor did Prudential acknowledge that it had in its possession at the time of its denial an April 1, 2008 e-mail from one of the AP's human resources employees, JoAnn McCarthy, stating "Terri's condition at the time [i.e., immediately following the 2004 motor vehicle accident] should have been look[ed] at more closely; it was clear back in 2005 that her condition was *not going to improve*." (emphasis added).  A true and accurate copy of Ms. McCarthy's e-mail is attached hereto as **Exhibit B**.

16.    Nelson immediately objected to Prudential's initial denial determination and, importantly, submitted a September 4, 2008 letter from her primary treating physician, Dr. Pamela Wratchford (who had continuously treated Nelson from immediately after the accident

up through the date she filed her claim) in support of her claim.  In the letter (a true and accurate copy of which is attached hereto as **Exhibit C**), Dr. Wratchford explained (i) that although Nelson had achieved significant cognitive improvements since the time of the accident, she would "always have some cognitive impairments" and (ii) that "[t]he more she 'pushes' through them [the impairments], the more incapacitated she is."  Overall, Dr. Wratchford opined that Nelson would best function in a job with "set hours, minimal travel, and not more than two consecutive work days in a row."

17.     Nelson also submitted a detailed letter (a copy of which is attached hereto as **Exhibit D**) from Robin C. Bernhard, a licensed clinical social worker with more than twenty (20) years of experience studying the effects of trauma on the brain.  Ms. Bernhard, who had personally examined and treated Nelson for several months, rendered the following relevant opinions about Nelson's injury and her potential to work:

> The cognitive, physical, and emotional symptoms that have resulted from the car accident have left Terri unable to function at even 50% of her past level of ability.  She is not going to be able to work steadily enough or for enough hours to support even a modest lifestyle because of the debilitating stabbing pain in her head which occurs as the result of stimulation.  Stimulation which may be subtle for someone without a brain injury is often debilitating and painful for someone with a brain injury. Surprisingly, over stimulation can result from emotional responses, even joy can become a problem when the end result is physical pain in the head.  Quiet thinking can bring on this type of over stimulation, too.  In my opinion, as a trauma therapist with 20 years of experience, Terri is not going to be able to support herself financially and is in need of permanent disability.  Ongoing medical needs and a multitude of symptoms make it impossible for her to maintain employment without actually exacerbating her present symptoms, now or in the future.
>
> . . .
>
> As a trauma therapist and one who is interested in assisting those who have suffered from a brain injury, I cannot state with enough

emphasis, that slowing life down to a crawl is necessary in order to have less pain and brain reactivity. Please understand that no neuropsychological test can accurately assess this need. When someone as smart as Terri, as intellectually capable as she, takes these and other psychological tests, even with her present deficits, she is probably going to score as high or higher than many folks who never had her incredible attributes to begin with. She will look as if her impairments are not significant enough to warrant permanent disability. This is problematic in using these tests for this purpose of evaluating the quality of one's life and one's capacity to sustain long term employment. Intelligence is not the problem. The problem is the inability to sustain levels of stimulation that would enable Terri to maintain employment.

**Exhibit D**.

18.     Prudential, however, reiterated its initial denial and concluded that the "new information did not change [its] decision to deny [Nelson's] claim."

19.     Nelson timely appealed the decision by letter dated September 30, 2008.

20.     In support of her appeal, Nelson submitted numerous additional records and materials, including a second letter (dated October 17, 2008) from Dr. Wratchford. In that letter (a true and accurate copy of which is attached hereto as **Exhibit E**), Dr. Wratchford reiterated her opinions about Nelson's cognitive limitations and then amplified her opinion about Nelson's work limitations. Specifically, Dr. Wratchford explained (i) that Nelson's "[w]orking in her current job is impossible because of the verbal and auditory requirements and demands" and (ii) that "it [was her] medical opinion that [Nelson] will never be able to perform her current job duties appropriately" because of her cognitive impairments.

21.     Nelson also submitted medical records from Dr. Gregory O'Shanick, a brain injury specialist who personally examined and treated Nelson and who documented Nelson's numerous ongoing cognitive difficulties.

22.    Despite this additional evidence, Prudential still refused to approve Nelson's claim and, instead, denied her appeal by letter dated July 28, 2009. A true and accurate copy of Prudential's denial letter is attached hereto as **Exhibit F**.

23.    According to Prudential, Nelson was not entitled to LTD benefits because the two third-party reviewers (neither of whom personally examined, met, or spoke with Nelson) that it used to review her medical evidence concluded that despite her injury, she was nevertheless neurologically and psychologically capable of performing the material duties of her regular job. One such reviewer (again, who never personally examined, met, or spoke with Nelson) even placed heavy reliance on the fact that post-accident, Nelson remained capable of performing "activities of daily living" and able to engage in "recreational activities outside her residence, including fishing." *See* **Exhibit F**. This reliance is wholly inappropriate, as there is no medical correlation (especially in the absence of any personal examination or interview of Nelson) between being able to *fish* and being able to perform the full time, day-to-day cognitive and mental duties of a Broadcast Editor and General Assignment Reporter.

24.    Moreover, Prudential reached its decision by arbitrarily discounting the opinions of Nelson's treating physicians and health care providers, namely those of Dr. Wratchford and Ms. Bernhard. The opinions are not ambiguous or unclear; they expressly state that Nelson is incapable of performing her regular job due to her ongoing cognitive impairments.

25.    Prudential, however, unreasonably ignored these opinions in favor of a "cold file" paper review of Nelson's records by medical reviewers who had never personally examined or interviewed Nelson. This preference for a "cold file" review was improper and in violation of the full and fair review requirements of ERISA.

26.     Indeed, although an in-person examination is not a *per se* requirement in the ERISA denial-of-benefits context, it is often essential where, as here, the nature of the disability at issue relates to one's mental health and/or cognitive functioning.  This is because, unlike cardiologists or orthopedists, who can formulate medical opinions based on objective findings derived from objective clinical tests, a psychiatrist or neuro-psychiatrist typically treats his patient's subjective symptoms.  That was the case here.

27.     Even worse, the non-treating, non-examining physicians who opined that Nelson was not disabled were retained by two third-party companies whose primary business missions are to provide "peer review" and other so-called "independent" evaluation services to entities such as insurance companies, employers, and third-party administrators.  In this regard, these two companies suffer from structural biases – whether they be explicit or implied – that skew their opinions so as to support denial decisions.  In other words, Prudential, as a repeat player with respect to the need to regularly obtain peer review and medical evaluation services, knows that these companies have an incentive to provide it with reports that will increase the chances that Prudential will return to them in the future – that is, reports upon which Prudential may rely in justifying its decision to deny benefits to a Plan participant.

28.     The first of these two companies, Reliable Review Services ("RRS"), is a company which routinely provides review services for the insurance industry and is regularly retained by insurance carriers, such as Prudential and Hartford, in evaluating claims for ERISA disability benefits.  RRS markets itself on its website as a "nationwide network of fully credentialed physician specialists in all areas of employee disability absence, supported by a management team dedicated to achieving *total client satisfaction*." (emphasis added).  It also touts, under the "ERISA Appeals" section of its website, the so-called objectivity of its reviews,

saying that "Objectivity helps ensure *defensibility*." Query: what kind of "defensibility" is necessary if the neutral medical expert actually opines that benefits should be paid? The obvious message from such a statement is that RRS's reviews will provide its insurance company clients with proper support for their *denial decisions*.

29.     Similarly partial to the insurance industry is PsyBar, LLC ("Psy Bar"), the second company relied upon by Prudential. PsyBar is a national professional services company which offers allegedly objective psychological/psychiatric consultations and evaluations to various business constituencies, including employers and insurance companies. In touting its services to "Insurers," though, PsyBar specifically emphasizes its potentially supportive role in denial-of-benefits litigation. Among other things, it pointedly says that "*Money* and *liability* are at stake" and that "You [the carrier] need to apply scientific knowledge to *legal and insurance issues*." (emphasis added). It then declares: "We are specialists in *objectivity* and *scientific defensibility*; decisions previously entrusted to opinion alone can now be made from a position of knowledge. We guide you to effective decision-making clearly, objectively and consistently." As with the services referenced by RRS, one must wonder what kind of "defensibility" is necessary or what kind of "liability" is "at stake" if PsyBar's medical expert, an allegedly neutral reviewer, actually opines that a claimant is disabled and that benefits should be paid? The clear message from PsyBar's marketing information is that no such opinions will be forthcoming.

30.     Under these circumstances, therefore, the absence of a personal examination or interview of Nelson by a qualified unbiased medical professional means that Prudential could not reasonably, lawfully, or correctly overrule the credible opinions of Nelson's treating physicians and medical providers, supported by contemporaneous medical records, that she was incapable of performing the duties her regular job because of her post-concussion syndrome.

31.     At present, Prudential's denial decision has deprived Nelson of approximately sixteen (16) months of LTD benefits to which she is entitled due to her inability to perform the material duties of her regular occupation.  With a monthly benefit amount of $3,125, that means that Nelson is owed roughly $50,000 to date.  Ultimately, Nelson will be entitled to receive the full twenty-four (24) months of LTD benefits related to her inability to perform her regular occupation, which is $75,000.

32.     Even further, after Prudential's denial decision is reversed and Nelson is properly awarded LTD benefits because of her inability to perform the material duties of her regular occupation, she will then be eligible for further LTD benefits due to her inability to perform the duties of any occupation.  According to the Plan, after twenty-four (24) months of payments, a Plan participant who remains disabled may continue to receive benefits until her sixty-fifth (65th) birthday if she satisfies the requirements for what are commonly called "any occ" benefits – that is, that she is unable to perform the "duties of any gainful occupation" for which she is "reasonably fitted by education, training, or experience."

33.     What this means for Nelson, who is currently 49 years old, is that if she remains disabled and otherwise meets the requirements of the "any occ" provisions of the Plan, she  will potentially be eligible for fifteen (15) additional years of LTD benefits after the completion of the 24-month "regular occupation" period.   In other words, she could ultimately receive an additional $562,500 in LTD benefits over the life of the Plan.

34.     To the extent applicable, Nelson has exhausted all of her administrative remedies related to her claim in this case.

## STANDARD OF REVIEW AND SCOPE OF JUDICIAL PROCEEDING

35.     In this case, the Plan does not vest Prudential with discretion to decide whether or
not Nelson is entitled to LTD benefits.  Indeed, Prudential has conceded as much in similar
ERISA litigation involving the very same Plan.  *See Hodel v. The Prudential Company of
America*, Civil Action No.: 2:07-00419 (S.D.W.Va.) (Docket No. 27; attached hereto as **Exhibit
G**).  As such, the standard of review applicable to Prudential's denial decision is *de novo*.

36.     Because the standard of review is *de novo*, this Court can and must reach an
independent decision as to whether Nelson is entitled to LTD benefits based on the cognitive
impairments arising from her post-concussion syndrome.  Unlike a denial decision governed by
an abuse of discretion standard of review, Prudential's decision here will be judged by this Court
based upon whether it was right, not whether it was reasonable.  This, in turn, will require the
taking of independent evidence, particularly the presentation of medical expert testimony by
Nelson, because there is a material dispute of fact as to whether or not Nelson is disabled under
the terms of the Plan.

37.     Moreover, because of the complicated and complex nature of Nelson's brain
injury and because of the corresponding disputes of fact related to whether or not is disabled
under the Plan due to her brain injury, this Court should empanel an advisory jury to assist it in
making findings of fact applicable to Nelson's claim for benefits.

## COUNT I:
### ENFORCE AND CLARIFY RIGHT TO BENEFITS  (29 U.S.C. § 1132(a)(1)(B))

38.     The allegations of paragraphs 1-37 are realleged as if fully set forth herein.

39.     As is clear from the allegations stated herein, Nelson made a timely and proper
claim for LTD benefits under the Plan.  Despite Nelson's credible and reliable evidence,
Prudential denied her claim for LTD benefits under the Plan.

12

40. Prudential's denial decision is wrong, incorrect, improper, unlawful, unreasonable, an abuse of discretion, and/or arbitrary and capricious and thus should be overturned.

41. Among other things, ERISA plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinion of a treating physician or treating health care provider.

42. Here, however, Prudential arbitrarily refused to credit the opinions and findings of Nelson's treating physicians and health care providers that Nelson is incapable of performing her job due to the cognitive impairments arising from her post-concussion syndrome.

43. Prudential's conclusion also was unreasonable and incorrect given its failure to have any mental health professional conduct a personal examination or interview of Nelson. For Prudential to rely solely on "cold file" paper reviews in the context of psychiatric, cognitive, and/or mental health problems such as those at issue in this case is unreasonable and led it to reach an incorrect decision about Nelson's disability.

44. Further, Prudential unreasonably and incorrectly discounted Nelson's subjective symptoms related to her mental health problems by dismissively characterizing them as "self-reports," even though psychiatric, cognitive, and mental health diagnoses, by definition, rest almost exclusively on self-reported symptoms and problems.

45. Additionally, the unreasonableness and incorrectness of Prudential's review is supported by the fact that Prudential labors under a conflict of interest vis-à-vis the benefits to be paid to Nelson under the Plan. Specifically, when an entity, such as Prudential here, both administers and insures a plan, its profits (or losses) depend in part on how the actual cost of providing coverage diverges from the projections on which it based premiums. Thus, over time,

a predilection to deny coverage pays well, even for inexpensive and infrequent treatments. Thus, under ERISA, this conflict must be treated as a factor in determining whether Prudential's denial decision was reasonable and/or correct.

46.     Finally, Prudential's review is unreasonable and incorrect because it rests on the tainted opinions of two reviewers who were retained by two third-party companies which have a built-in structural bias to obtain review decisions in favor of denials.

47.     For all of these reasons, this Court should award Nelson LTD benefits under the Plan from April 2008 through the present time and, ultimately, through the completion of the 24 month benefit period at issue if the case lasts that long.  Such benefits will total approximately $75,000.

48.     The Court should also award Nelson her attorney's fees and all other appropriate relief under ERISA, as requested below, for having to litigate these particular issues in this lawsuit.

49.     The administrative process applicable to Nelson's claim has been exhausted and Nelson's claim is ripe for judicial review in this Court.

### COUNT II:
### DENIAL OF FULL AND FAIR REVIEW (29 U.S.C. § 1132(a)(1)(B))

50.     The allegations of paragraphs 1-37 are realleged as if fully set forth herein.

51.     ERISA requires that plan administrators conduct a "full and fair" review of each properly filed claim for plan benefits.

52.     Here, as described herein (especially its improper discrediting of Nelson's medical evidence, its denial even though it failed to have Nelson personally examined or interviewed, and its improper rejection of Nelson's subjective symptoms), Prudential failed to conduct a full and fair review of Nelson's claim and thus violated ERISA.

53.     As such, this Court should award Nelson LTD benefits under the Plan from April 2008 through the present time and, ultimately, through the completion of the 24 month benefit period at issue if the case lasts that long.  Such benefits will total approximately $75,000.

54.     In the alternative, this Court should remand Nelson's claim back to Prudential to perform an administrative review that complies with the "full and fair review" provisions of ERISA.

55.     The Court should also award Nelson her attorney's fees and all other appropriate relief under ERISA, as requested below, for having to litigate these particular issues in this lawsuit.

56.     The administrative process applicable to Nelson's claim has been exhausted and Nelson's claim is ripe for judicial review in this Court.

WHEREFORE, Plaintiff requests this Honorable Court to order, adjudge, and decree that:

(a)     Nelson be awarded all of the benefits she has sought under the Plan, or in the alternative, a remand back to Prudential, the Plan administrator, for an administrative review that complies with ERISA;

(b)     Nelson be awarded pre-judgment interest;

(c)     Nelson be awarded post-judgment interest;

(d)     Nelson be awarded costs;

(e)     Nelson be awarded attorney's fees associated with each Count in this lawsuit; and

(f)     Nelson be awarded all such other further and appropriate equitable relief.

**AN ADVISORY JURY PURSUANT TO FED.R.CIV.P 39(c)(1) IS REQUESTED**

Respectfully submitted,

TERRI L. NELSON

By _____
                    Of Counsel

Richard F. Hawkins, III (VSB #40666)
THE HAWKINS LAW FIRM, PC
One East Cary Street, Suite 201
Richmond, Virginia 23219
(804) 228-4900 (telephone)
(804) 644-6553 (facsimile)

    Counsel for Plaintiff Terri L. Nelson